UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEENA CLARK,<br><br>      Plaintiff,<br><br>      v.<br><br>QUANTIFIED MEDIA INC. D/B/A QUANTIFIED COMMERCE AND AGAM BERRY, Jointly and severally,<br><br>      Defendant. | ECF CASE<br><br>No.: _____<br><br><u>COMPLAINT</u><br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1. Plaintiff Sheena Clark ("Clark") alleges claims of sex discrimination, harassment and retaliation under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against her former employers, Defendants Quantified Media Inc. d/b/a Quantified Commerce and Agam Berry.

2. Clark alleges Defendants willfully violated the New York Labor Law ("Labor Law") by (i) failing to pay overtime premium pay, and (ii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

3. Clark further alleges Defendants willfully violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime premium pay.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337 and 1343, supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, and jurisdiction over the FLSA claims under 29 U.S.C. § 216(b).

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

6. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7. Clark was, at all relevant times, an adult individual, residing in Brooklyn, New York, Kings County.

8. Upon information and belief, Quantified Commerce is foreign corporation, which is organized under Delaware law and is authorized to do business in the State of New York with its principal place of business in New York located at 214 West 39th Street, Suite 305, New York, New York 10018.

9. Defendant Quantified Commerce is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Quantified Commerce is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled include, but are not limited to, computers, pens and paper.

10. Defendant Berry was, at all relevant times, the co-founder and co-CEO of Quantified Commerce. Defendant Berry, upon information and belief, owns, operates and controls Quantified Commerce's day-to-day operations and management and jointly employed Clark at all relevant times.

11.     Each Defendant, either directly or indirectly, has hired and fired Clark, controlled Clark's work schedule and employment conditions, determined her payment rate and method, and kept at least some records regarding her employment.

STATEMENT OF FACTS

12.     At all relevant times, Quantified Commerce is an e-commerce company.

13.     Clark commenced her employment with Qualified Commerce at its New York City office on or about August 1, 2018 as a video editor.

14.     As a video editor, Clark created video advertisements for Quantified Commerce's Facebook page. Defendant Berry provided Clark with explicit instructions as to what to include in the videos and how to create them. The videos that Clark created were not truly her own original videos because Defendant Berry provided her with instructions on how to make them.

Discrimination and Retaliation

15.     Throughout her employment, Defendant Berry discriminated against Clark on the basis of her sex on numerous occasions. The following are representative examples:

    a.      He required Clark and the other female employees to sit separately from the white men in the office.

    b.      He complained about certain behavior he believed Clark exuded at work, while not reprimanding her male co-workers for the same exact behavior.

    c.      Upon information and belief, he paid male employees who performed the same duties and tasks as Clark at least $10,000 more than Clark.

    d.      At all relevant times, he employed only three female employees.

   e. Clark was the only female employee who he employed to work in Defendants' video editing department.

   f. He repeatedly called Clark and another female employee "work place hazards," while not making similar remarks to the male employees.

   g. He repeatedly told Clark and another female employee that their behavior was "distracting," while not making similar remarks to the male employees.

   h. He often complained that Clark spoke to her coworkers during the day and sent them "gif's," while not reprimanding her male co-workers who did the same thing.

  16. On May 10, 2019, Defendant Berry sent an email to Clark indicating that her "loud talking, constantly sending gif's and creating groups . . . will no longer be tolerated," and that "[i]f the behavior does not change in the next 2 weeks, [he'll] be forced to take further action."

  17. Thereafter, Clark sent a message through Quantified Commerce's inner-company chat to Ryan Andreas, a co-founder and co-CEO of Quantified Commerce who works out of Quantified Commerce's Florida office, asserting that "sending gifs" is not a "fireable offense" and that she is "being singled out" given that Defendant Berry does not reprimand any male employees for the same behavior. Clark also asserted that she was "being discriminated against for being female and [she] can not tolerate this any longer, it's completely out of hand . . . and laughably transparent."

  18. On May 13, 2019, at 6:55 a.m., Clark sent an email to Andreas regarding Defendant Berry's discriminatory behavior towards her (the "Email").

  19. In the Email, Clark asserted, *inter alia*, that:

> [Defendant Berry] berates me for 'talking too loudly,' 'talking too much' or 'sharing gifs,' <u>when the reality is that every other person in my department does these things – I just happen to be the only female in the department</u>. He has threatened to fire me and revoked half of my bonus for doing things for which male employees are not reprimanded. This appears to be discrimination based on my sex and I want to make it clear that I find it unacceptable. (Emphasis in Original).

20. Less than ten hours after Clark sent the Email, at around 4:00 p.m., and in clear retaliation for sending the Email, Defendant Berry terminated her employment.

21. Clark asked Defendant Berry if he was terminating her because of the Email, to which Defendant Berry replied "I decline to comment."

22. Clark also asked Defendant Berry the reason why she was being terminated, and Defendant Berry failed to provide her with a reason. He, instead, told her no legal requirement exists that he give a reason because she is an at-will employee. Clark explained that he was not permitted to fire her for retaliatory reasons.

23. Notably, Defendant Berry did not provide Clark with two weeks to improve her behavior as set forth in his May 10 email to her.

<u>FLSA and Labor Law Violations</u>

24. Throughout Clark's employment, Defendants improperly classified her as exempt from the overtime requirements of the FLSA and the Labor Law.

25. Throughout her employment, Clark regularly worked in excess of forty hours per week.

26. From August 2018 to May 13, 2019, Defendants scheduled Clark to work from 10:00 a.m. to 6:00 p.m., five days per week. Defendants, however, regularly required Clark to work longer than her regular schedule. In fact, Clark worked until 6:30

p.m. almost every night, and sometimes worked as late as 7:00 p.m., resulting in her regularly working at least 42.5 hour per week.

27. Defendant Berry was aware of Clark working beyond her regular schedule, as he saw her working these hours and assigned her the work.

28. Throughout Clark's employment, Defendants paid her a fixed annual salary, rather than an hourly rate. Defendants did not pay her overtime premium pay for any week in which she worked in excess of 40 hours.

29. Clark's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

30. From August 2018 to December 31, 2018, Defendants paid Clark an annual salary of $35,000.

31. From January 1, 2019 until she was unlawfully terminated on May 13, 2019, Defendants paid her an annual salary of $48,000.

32. Clark's salary was based on her 40-hour work schedule.

33. Defendants paid Clark a fixed annual salary incorrectly concluding that she was an exempt employee under the FLSA and Labor Law.

34. Defendants did not provide Clark the Notice of Acknowledgement of Payrate and Payday under the N.Y. Lab. Law § 195.1 when she was hired or at any point during her employment.

FIRST CAUSE OF ACTION
SEX DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
AS AGAINST ALL DEFENDANTS

35. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

36. At all relevant times, Clark was an "employee" and "person" within the meaning of the NYSHRL and Defendants were "employers."

37. The NYSHRL prohibits employment discrimination and harassment based on gender. N.Y. Exec. Law § 296(1)(a).

38. Defendants discriminated against Clark based on her gender by paying her less than her male peers and subjecting her to disciplinary action when men did the same thing but were not reprimanded, violating the NYSHRL.

39. Quantified Commerce is vicariously liable for an actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Clark.

40. Defendant Berry had the authority to affect Clark's employment terms and conditions.

41. Defendant Berry is personally liable for the damages under this claim because he constitutes an employer and participated in the conduct giving rise to this claim. N.Y. Exec. Law §§ 296(1), 296(6).

42. As a result of Defendants' discrimination of her, Clark has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

SECOND CAUSE OF ACTION
GENDER BASED DISCRIMINATION UNDER THE NEW YORK CITY HUMAN
RIGHTS LAW AS AGAINST ALL DEFENDANTS

43. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

44. At all relevant times, Clark was an "employee" and "person" within the meaning of the NYCHRL and Defendants were "employers."

45. Clark was treated less well than her male colleagues because of her gender by paying her less than her male peers and subjecting her to disciplinary action when men did the same thing but were not reprimanded, violating N.Y.C. Admin. Code § 8-107(1)(a).

46. Quantified Commerce is strictly liable for the actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Clark.

47. As a result of Defendants' harassment of her, Clark has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

48. Defendants discriminated against Clark with malice and/or reckless indifference to her rights under the NYCHRL.

49. As a result of Quantified Commerce's unlawful conduct, Clark can recover punitive damages against Quantified Commerce. N.Y.C. Admin. Code § 8-502.

THIRD CAUSE OF ACTION
GENDER BASED HARASSMENT UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

50. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

51. At all relevant times, Clark was an "employee" and "person" within the meaning of the NYCHRL and Defendants were "employers."

52. Clark was treated less well than her male colleagues because of her gender, violating N.Y.C. Admin Code § 8-107(1)(a).

53. Quantified Commerce is strictly liable for the actionable hostile environment created by its supervisors who had immediate or successively higher authority over Clark.

54. As a result of Defendants' harassment of her, Clark has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, inconvenience, and loss of enjoyment of life.

55. Defendants harassed Clark with malice and/or reckless indifference to her rights under the NYCHRL.

56. As a result of Quantified Commerce's unlawful conduct, Clark can recover damages against Quantified Commerce. N.Y.C. Admin. Code § 8-502.

FOURTH CAUSE OF ACTION
UNLAWFUL RETALIATION UNDER NEW YORK CITY HUMAN RIGHTS LAW
AS AGAINST ALL DEFENDANTS

57. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

58. The NYCHRL prohibits employers from retaliating or discriminating in any manner against any person because such person has opposed any practice the NYCHRL forbids. N.Y.C. Admin. Code § 8-107(7).

59. Under the NYCHRL, the retaliation or discrimination complained of need not result in an "ultimate action" with respect to the employee, or even in a materially adverse change in the employee's terms and conditions, provided that the retaliatory or discriminatory act(s) complained of would be reasonably likely to deter a person from

engaging in protected activity. Restoration Act § 3 (amending N.Y.C. Admin. Code § 8-107(7)).

60. Clark took action to oppose Quantified Commerce's discriminatory work environment.

61. Defendants engaged in conduct that was reasonably likely to deter a person from engaging in such conduct, violating the NYCHRL's anti-retaliation provision. N.Y.C. Admin. Code § 8-107(7).

62. A causal connection exists between Clark's opposition and Quantified Commerce's conduct.

### FIFTH CAUSE OF ACTION
### RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

63. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

64. Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer . . . to . . . discriminate against any person because [s]he has opposed any practices forbidden under this article or because [s]he has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e).

65. Clark engaged in protected activity, having opposed practices the NYSHRL forbids; Defendants were aware of Clark's participation in the protected activity; Defendants took adverse action against Clark; and a causal connection existed between Clark's protected activity and the adverse action Defendants took.

66. No legitimate, non-retaliatory reasons exist for the adverse action Defendants took against Clark.

## SIXTH CAUSE OF ACTION
## FAILURE TO PAY OVERTIME UNDER THE FLSA

67. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

68. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

69. Defendants were required to pay Clark no less than one and one-half (1.5) times the regular rate at which she was employed for all hours worked in excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

70. At all relevant times, Defendants had a policy and practice of refusing to pay Clark the proper overtime compensation for her hours worked in excess of forty (40) per workweek.

71. Defendants misclassified Clark as an exempt employee under the FLSA.

72. Defendants were aware of should have been aware that the practices described in this complaint were unlawful, making their violations willful or reckless.

73. Defendants have not made a good faith effort to comply with the FLSA with respect to Clark's compensation.

74. Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

## SEVENTH CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE LABOR LAW

75. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

76. Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Clark one and one-half (1.5) times her regular rate of pay for all hours she worked in excess of forty (40) per workweek.

77. Defendants failed to pay Clark the overtime wages to which she was entitled, violating N.Y. Lab. Law § 650 and Part 142 § 142-2.2 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

78. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Clark overtime.

79. Due to Defendants' Labor Law violations, Clark is entitled to recover from Defendants her unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### FAILURE TO PROVIDE 195.1 NOTICE UNDER THE LABOR LAW

80. Clark repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

81. Defendants willfully failed to supply Clark with the required Notice and Acknowledgement of Pay Rate and Payday under § 195.1(a) within ten business days of her first employment date.

82. Due to Defendants' violations of N.Y. LAB. LAW § 195.1, Clark is entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-b (2016).

PRAYER FOR RELIEF

WHEREFORE, Clark respectfully requests that this Court grant the following relief:

1. Accepts jurisdiction over this matter.

2. Impanels and charges a jury with respect to the causes of action.

3. A declaratory judgment that the practices complained of herein are unlawful under the EPA.

4. Awards Clark the following damages against Quantified Commerce and Defendant Berry:

   a. Back pay, front pay, and all benefits along with pre and post judgment interest in the amount of at least $100,000.00;

   b. An award of punitive damages under the NYCHRL;

   c. Punitive, liquidated and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, and medical expenses in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination, harassment and retaliation are repulsive to legislative enactments in the amount of at least $500,000.00;

   d. An award of unpaid overtime under the Labor Law and the FLSA;

    e.  An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

    f.  An award of liquidated damages as a result of Defendants' Labor Law violations;

    g.  An award of liquidated damages as a result of Defendants' willful FLSA violations;

    h.  An award of pre-judgment and post-judgment interest;

    i.  Attorneys' fees, costs and expenses to the fullest extent permitted by law; and

    j.  Any other relief that this Court deems just and equitable.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Clark demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
July 24, 2019

        LIPSKY LOWE LLP

        <u>s/ Douglas B. Lipsky</u>
        Douglas B. Lipsky
        Sara Isaacson
        420 Lexington Avenue, Suite 1830
        New York, New York 10170-1830
        212.392.4772
        doug@lipskylowe.com
        sara@lipskylowe.com
        *Attorneys for Plaintiff Sheena Clark*